IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
JOHN A. PRICE,                          )
         Plaintiff,                     )          Civil Action No. 06-1569 (RCL)
                                        )
v.                                      )
                                        )
BEN S. BERNANKE,                        )
CHAIRMAN OF THE BOARD                   )
OF GOVERNORS OF THE                     )
FEDERAL RESERVE SYSTEM,                 )
         Defendant.                     )
_____)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant, the Board of

Governors of the Federal Reserve System (the "Board"), hereby moves for summary judgment

on all counts of plaintiff's Complaint.

This case is the latest chapter in a lengthy administrative and judicial process brought by

plaintiff, now a Grade 29 manager in the Data Center and Distributed Software Support branch

of the Board's Division of Information Technology ("IT").  Beginning in early 2001, plaintiff

filed the first of what are now four administrative complaints of discrimination with the Board.

On June 14, 2004, following the administrative dismissal of the second of these administrative

complaints, but before resolution of the first and third, plaintiff filed a civil action styled Price v.

Greenspan, No. 04-0973 (RCL) ("Price I") in this Court, claiming sex, age, and race

discrimination and retaliation in connection with a number of workplace issues raised in his first

three administrative complaints.

The Price I complaint alleged unlawful discrimination and retaliation based on (1)

plaintiff's 2000 performance evaluation; (2) the 2001 reorganization of the IT Division; and

(3) plaintiff's non-selection for a promotion to officer positions in February 2001 and March 2002.  This Court granted the defendant's motion for summary judgment as to the discrimination counts and dismissed the retaliation counts as untimely filed, 374 F. Supp. 2d 144 (D.D.C. 2005), and both of these rulings were upheld on appeal.  Price v. Bernanke, 2006 U.S. App. LEXIS 6166 (D.C. Cir. 2006); Price v. Bernanke, 470 F.3d 384 (D.C. Cir. 2006).

Meantime, on January 6, 2006, plaintiff filed his fourth administrative complaint, claiming sex, race, and age discrimination and retaliation in connection with three new claims. The new claims were (1) that on October 31, 2005, a woman, Jill Rosen, had been promoted to the position of Assistant Director of the IT Division, a position plaintiff felt should have gone to him; (2) that plaintiff's 2005 performance evaluation ("PMP") of "Outstanding" was unfairly low, particularly compared to the higher "Extraordinary" rating given to a younger colleague; and (3) that a younger Asian colleague had received the Board's 2005 Special Achievement Award, an award plaintiff felt should have gone to him.  See Exhibit A, ROI00038-00041 (Fourth Administrative Complaint).  In accordance with its procedural rules, the Board investigated these claims, including obtaining sworn statements from a number of Board employees, and issued a report of investigation.[1]  Rather than proceeding to an administrative hearing or an agency decision without a hearing, plaintiff filed the current civil action ("Price II") on September 8, 2006.

The Price II Complaint restates the factual allegations contained in the Price I complaint, adding only allegations relating to the three claims identified above, and restates virtually

---

[1] Exhibits to this Motion that begin with bates numbers ROI are taken from the Report of Investigation.

verbatim the four counts of unlawful discrimination and retaliation alleged in <u>Price I</u>, citing all

allegations in the complaint as support.  As we will show, to the extent the discriminatory or

retaliatory acts alleged in Counts I to IV of the <u>Price II</u> complaint relate to the earlier incidents of

alleged discrimination and retaliation, all of which were raised and decided in <u>Price I</u>, those

claims are barred by res judicata.  The remaining claims based on the additional factual

allegations in the <u>Price II</u> complaint must be rejected on the merits on the basis of the undisputed

facts.

## STATEMENT OF POINTS AND AUTHORITIES

<u>Motions for Summary Judgment</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  To prevail on a motion for summary judgment, the moving party

must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  By pointing to the absence

of evidence proffered by the nonmoving party, the moving party may prevail on summary

judgment.  <u>Id</u>.  The nonmoving party must present specific facts that would enable a reasonable

jury to find in its favor.  <u>Greene v. Dalton</u>, 164 F. 3d 671, 675 (D.C. Cir. 1999).   A motion for

summary judgment is also an appropriate method to dispose of an affirmative defense such as res

judicata.  <u>See</u> Wright & Miller, <u>Federal Practice and Procedure</u>, 3d ed. 2004, § 1277 at 644; <u>Role</u>

<u>Models America Inc. v. Penmar Devel. Corp.</u>, 394 F. Supp. 2d 121, 127-28 (D.D.C. 2005).

Standards for Summary Judgment Under Title VII and the ADEA

Section 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-16, provides that all personnel actions affecting federal employees shall be made free from any discrimination based on race, color, religion, sex, or national origin. The Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. 633a, prohibits discrimination based on age against federal employees aged 40 and over.

Where, as here, there is no direct evidence of discrimination, the applicable substantive law for claims of discrimination under Title VII and the ADEA is the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Barnette v. Chertoff, 453 F. 3d 513, 515 (D.C. Cir. 2006). Under the McDonnell Douglas framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 801. In order to establish a prima facie case of discrimination, plaintiff must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gave rise to an inference of discrimination. George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005). One way a plaintiff can satisfy the third prong is by showing that he was treated differently than a similarly situated employee not in his protected class. Id., citing Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999).

If plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253-256 (1981). The defendant's burden, however, is one of production. Id. The defendant does not have to persuade the court that "it was actually motivated by the proffered reason. It is sufficient if the defendant's evidence raises a genuine issue of fact as to

- 4 -

whether it discriminated against the plaintiff." Id. at 254. Once the defendant meets its burden of production, "the McDonnell Douglas framework - with its presumptions and burdens - disappear[s], and the sole remaining issues [is] discrimination vel non." Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 143 (2000).

To survive summary judgment, plaintiff must show that "a reasonable jury would conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003). Summary judgment may be granted for the defendant even where plaintiff has established a prima facie case unless the plaintiff "produce[s] substantial probative evidence that the proffered reason was not the true reason for the employment decision and that the real reason was [discriminatory animus]." Gleklen v. Democratic Congressional Campaign Comm., Inc., 199 F.3d 1365, 1367-68 (D.C. Cir. 2000). In other words, "it is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason." Fischbach v. D.C. Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996). Throughout the matter, plaintiff always retains the ultimate burden of proving defendant intentionally discriminated against him. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

Standards for Analyzing Claims of Retaliation

In the absence of direct evidence of retaliation, the McDonnell Douglas framework is likewise used in evaluating claims of retaliation. Lathram, 336 F.3d at 1088-89. To establish a prima facie case of retaliation under Title VII or the ADEA, the plaintiff must establish that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action and (3) there

is a causal connection between the protected activity and the adverse employment action.  <u>Cones</u> <u>v. Shalala</u>, 199 F.3d 512 (D.C. Cir. 2000); <u>Paquin v. Federal Nat'l Mortgage Ass'n</u>, 119 F.3d 23, 31 (D.C. Cir. 1997).  Once plaintiff makes a prima facie showing, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action.  <u>McDonnell Douglas</u>, 411 U.S. at 802.  Plaintiff must then respond by demonstrating that the employer's asserted reasons for the adverse action are pretextual.  <u>Burdine</u>, 450 U.S. at 253-56.

The causation component for retaliation claims may be shown by demonstrating that the employer had knowledge of the plaintiff's protected activity and that the employer took the adverse employment action shortly thereafter.  It is uniformly recognized that the protected activity and the adverse employment action being complained of must be "very close" in time. <u>Clark County Sch. Dist v. Breeden</u>, 532 U.S. 268, 273 (2001) (noting that a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and that a 20-month period suggests "no causality at all"); <u>see</u>, <u>e.g.</u>, <u>Sullivan-Obst v.</u> <u>Powell</u>, 300 F. Supp. 2d 85, 92 (D.D.C. 2004)(3-month period insufficient); <u>Richmond v. Oneok,</u> <u>Inc.</u>, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); <u>Lewis v. Holsum of Fort</u> <u>Wayne, Inc.</u>, 278 F.3d 706 (7th Cir. 2002)(3-month period insufficient).

## ARGUMENT

I.        **TO THE EXTENT PLAINTIFF'S CLAIMS WERE PREVIOUSLY ADJUDICATED IN <u>PRICE I</u>, THEY ARE BARRED BY THE DOCTRINE OF RES JUDICATA.**

The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues.  Under the doctrine, "a final judgment on the merits in a prior suit involving the same parties or their privies bars subsequent suits based on the same cause of

action." <u>Coleman v. Potomac Elec. Power Co.</u>, 310 F. Supp. 2d 154, 160-61 (D.D.C. 2004), <u>aff'd</u>, 2004 U.S. App. LEXIS 21820 (D.C. Cir. 2004)).  The four factors that must exist for res judicata to apply are: (1) an identity of parties in both suits; (2) a judgment rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) the same cause of action in both suits.  <u>Id</u>. (citing  <u>Polsby v. Thompson</u>, 201 F. Supp. 2d 45, 48 (D.D.C. 2002)).  "A final decision on the merits prohibits any future case arising from the same 'nucleus of facts,' for it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies."  <u>Id</u>., quoting <u>Page v. United States</u>, 729 F.2d 818, 820 (D.C. Cir. 1984)).  The purpose of res judicata is to "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum shopping and piecemeal litigation."  <u>Polsby</u>, 201 F. Supp 2d at 48, quoting <u>Hardison v. Alexander</u>, 655 F.2d 1281, 1288 (D.C. Cir. 1981).

Plaintiff's complaint in this action is merely a slightly expanded version of the one he filed in <u>Price I</u>, incorporating verbatim many of the same paragraphs and allegations.  <u>Compare</u> <u>Price I</u> Complaint, attached hereto as Exhibit B, at  ¶¶ 1-7, 9-67 with <u>Price II</u> Compl. at ¶¶ 1-6, 8-68,70.  Just as in <u>Price I</u>, the <u>Price II</u> Complaint broadly encompasses two types of claims: (1) discrimination on the basis of race, sex, and age (Counts I and II), and (2) retaliation for complaining of such practices (Counts III and IV).  None of the plaintiff's four counts in either complaint identifies any specific act or conduct plaintiff believes to be discriminatory or retaliatory, or the time when the discrimination or retaliation allegedly occurred.  Indeed, the text of the Counts paragraphs in the two civil complaints is virtually identical.  <u>Compare</u> <u>Price I</u> Compl. at  ¶¶ 73-94 <u>with</u> <u>Price II</u> Compl. at ¶¶ 97-118.  These counts are all based on all of the

allegations of the complaint, which, in the case of Price II, include all of the factual allegations

made in Price I.  Thus, it is necessary to look to the factual allegations of Price I and the

underlying administrative claims on which that case was based to determine what claims are

precluded by the prior judgment.

In this case, there has been a final judgment on the merits with respect to all allegations

raised in Price I.  All of plaintiff's claims of discrimination in Price I were rejected because the

Court found that defendant had established a nondiscriminatory justification for each of the

actions complained of, and plaintiff submitted no evidence to raise an issue of pretext.  Price I,

374 F. Supp. 2d at 186.  Plaintiff's retaliation claims were dismissed because he did not file them

within the 90-day filing period that followed the EEOC's determination upholding the agency's

dismissal of his administrative complaint alleging retaliation.  Id. at 184-86.[2]  The parties in

Price I are identical to those in the current case, Price II,[3] and this Court has jurisdiction over both

actions. Thus, all of the criteria for the application of res judicata exist with respect to all claims

that were raised in Price I.  The factual allegations of the Price I Complaint are identical to those

of the Price II Complaint with the exception of ¶¶ 68-69 and ¶¶ 71-91 of the Price II Complaint,

dealing with the new allegations discussed above.  Accordingly, all claims raised in the Price II

Complaint other than those in the newly added paragraphs are barred by res judicata.  Velikonja

---

[2]  A dismissal on statute of limitations grounds is considered a judgment on the merits for purposes of the doctrine of res judicata.  Smalls v. United States, 471 F.3d 186 (D.C. Cir. 2006), citing Plaut v. Spendthrift Farm, 514 U.S. 211, 228 (1995).

[3]  The complaint in Price I named the then-Chairman of the Federal Reserve Board, Alan Greenspan, as defendant; the current complaint names the current Chairman, Ben S. Bernanke, as defendant.  For res judicata purposes, this distinction is irrelevant.  Polsby, 201 F. Supp. 2d at 49.

v. Ashcroft, 355 F. Supp. 2d 197, 202 (D.D.C. 2005) (res judicata bars plaintiff from asserting

claims based on the same nucleus of facts that underlies claims in earlier complaint).

**II.        PLAINTIFF CANNOT ESTABLISH AN ELEMENT OF HIS PRIMA
             FACIE CASE OF RETALIATION, AND THUS THE BOARD IS
             ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
             RETALIATION CLAIMS**

        Counts III and IV allege that the actions plaintiff complains of – the promotion of

Ms. Rosen, the less than "Extraordinary" performance rating, and the failure to award plaintiff the

Special Achievement Award, all of which occurred between October and December 2005 – were

taken in retaliation for his prior participation in the EEO process in violation of Title VII (Count

III) and the ADEA (Count IV).  But because the undisputed facts show that the decision-makers

in those actions were unaware of any activity by Plaintiff relating to his prior EEO claims that

were close in time to the challenged actions, he will be unable to establish causation, which is a

critical element of his prima facie case.

        In order to establish a prima facie case of retaliation, a plaintiff must first show that "those

capable of making employment decisions had knowledge" of the protected activity.  Carter v.

Pena, 14 F. Supp.2d 1, 9-10 (D.D.C. 1997), aff'd, 1998 WL 315616 (D.C. Cir. 1998); accord

Laboy v. O'Neill, 2002 WL 1050416 (D.C. Cir. 2002) (in summarily affirming award of

summary judgment to the government, court noted that "because the official responsible for

ordering appellant's termination was unaware of appellant's prior EEO activity, appellant failed

to establish a prima facie case of retaliation)."  Because the theory of retaliation is that adverse

action was taken against the employee in reaction to the employee's exercise of his rights under

Title VII, failure to present evidence of the decision-maker's knowledge of the protected activity

results in dismissal for failure to establish a prima facie case.  See, e.g., Carter v. Pena, supra;

<u>Davis v. Ashcroft</u>, 355 F. Supp. 2d 330, 351-52 (D.D.C. 2005);  <u>Owens v. National Medical Care,</u>

<u>Inc.</u>, 337 F. Supp. 2d 131, 138 (D.D.C. 2004); <u>Buggs v. Powell</u>, 293 F. Supp. 2d 135, 150-51

(D.D.C. 2003); <u>Hazward v. Runyon</u>, 14 F. Supp.2d 120, 124-25 (D.D.C. 1998) (specifically

rejecting plaintiff's position that no proof of a supervisor's knowledge of protected activity is

required for a prima facie case of retaliation).

      Once it is established that the alleged retaliator had some knowledge of the plaintiff's

protected activity, it must be shown that the adverse personnel action occurred "very close" in

time to that activity.  <u>Breeden</u>, 532 U.S. at 273 (noting that a three- or four-month period between

an adverse action and protected activity is insufficient to show a causal connection, and that a

twenty-month period suggests "no causality at all"); <u>Sullivan-Obst</u>, 300 F. Supp. 2d at 92

(three-month period insufficient).

      With respect to two of the three adverse personnel actions plaintiff complains of – the

less-than-Extraordinary performance rating and the failure to receive the Board's Special

Achievement Award – plaintiff will not be able to establish even that the deciding official had any

knowledge whatsoever of his prior EEO activity.  The undisputed facts establish that plaintiff's

supervisor, Mr. Po Kim, was solely responsible for rating plaintiff  "Outstanding" rather than

"Extraordinary" in the autumn of 2005.  <u>See</u> Declaration of Po Kim, Exhibit C hereto, at ¶¶ 6-8;

Declaration of Marianne Emerson, Exhibit D hereto, at ¶ 15.  Similarly, as plaintiff's supervisor,

Mr. Kim was the individual who would have decided in the fall of 2005 to recommend plaintiff to

receive the Board's Special Achievement Award, and he did not do so.  Kim Decl., Exhibit C, at

¶¶ 4-5; Emerson Decl., Exhibit D, at ¶ 12.  At the time he made those decisions, Mr. Kim was

"unaware of any activity on the part of [plaintiff] relating to EEO rights and was unaware

[plaintiff] had filed a civil complaint in District Court alleging discrimination." Id. at ¶ 10.

Accordingly, plaintiff's claim of retaliation with respect to these two alleged adverse employment

actions must fail.

      The matter is different in details but not in outcome with respect to plaintiff's third alleged

adverse action, that of the promotion of Jill Rosen to Assistant Director of IT in October 2005.

There, the undisputed facts show that it was the director of the IT Division, Marianne Emerson,

who was solely responsible for deciding not to promote plaintiff to that position.  Emerson Decl.,

Exh. D, at ¶¶ 6-11.  Unlike Mr. Kim, Ms. Emerson was aware generally of the existence of

plaintiff's action in Price I starting in July 2004.  Id. at ¶ 16.[4]  But this general awareness –

starting 15 months prior to the allegedly retaliatory action – is too remote in time to act as a

trigger for retaliation in October 2005.  And Ms. Emerson was "not aware of any specific actions

taken by [plaintiff] regarding [Price I] during the time period between August and December

2005."  Id. at ¶ 16.  Thus, in the three months preceding her decision to promote Ms. Rosen to

Assistant Director, Ms. Emerson was not aware of protected activity by the plaintiff.  As noted

above, courts generally hold that such a gap between the protected activity and the alleged

retaliatory action is too long to establish the causation element of a prima facie case of retaliation.

      During the processing of the Fourth Administrative Complaint, plaintiff submitted an

affidavit arguing that the Board engaged in retaliation "because the District Court had recently

dismissed [his] EEO case and the Board felt free to act after the case had been dismissed."

Exhibit E, Price Affidavit, ROI00084-00097 at ROI00085. While plaintiff seems to suggest that

---

    [4] The civil complaint in Price I was filed on June 14, 2004.  See Exhibit B (Price I Complaint).

the anchor for determining temporal proximity should be the dismissal of <u>Price I</u>, this argument fails because it improperly suggests that the court's action, not his own, constitutes a "protected activity" of the plaintiff.  This is contrary to the teaching of both the Supreme Court, <u>see</u> <u>Breeden</u>, 532 U.S. at 273 (holding that the EEOC's issuance of a right-to-sue letter is not a protected activity because the employee takes no part in it), and of this court, <u>see</u> <u>Jones v. Greenspan</u>, 402 F. Supp. 2d 294, 303 (D.D.C. 2006) (EEOC's acknowledgment of request for a hearing is not protected activity by plaintiff).  It is also contrary to the language of Title VII, which makes it illegal to discriminate against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a).  Plaintiff obviously did not "assist" or "participate in" the District Court's decision to dismiss his action.

Thus, because the decision-making official with regard to the Rosen promotion was unaware of any recent EEO activity undertaken by plaintiff at the time of the promotion, plaintiff will be unable to show that the action was taken in retaliation for his prior EEO activity.

Accordingly, the Board is entitled to summary judgment as to Counts III and IV of the <u>Price II</u> Complaint because plaintiff cannot establish a prima facie case of retaliation.  In the alternative, if the Court finds that plaintiff has established a prima facie case of retaliation, the Board should still be granted summary judgment on the basis of the undisputed facts because, as explained below, plaintiff has failed to provide any evidence that would controvert the Board's legitimate, non-discriminatory reasons for the actions taken.

III.        **PLAINTIFF'S CLAIMS OF DISCRIMINATION AND
            RETALIATION ARE WITHOUT MERIT BASED ON THE
            UNDISPUTED FACTS.**

Once the allegations barred by res judicata are eliminated, the only bases for plaintiff's

discrimination claims in this action alleged in the complaint are that plaintiff was discriminated

and retaliated against: (1) on the basis of sex, when a female colleague, Jill Rosen, was promoted

to Assistant Director; (2) on the basis of age, when plaintiff was given a performance rating of

"Outstanding'" rather than "Extraordinary" for the 2005 performance review period while a

younger colleague received an "Extraordinary" rating; and (3) on the on the basis of race and age,

when a younger Asian colleague was selected for the Board's Special Achievement Award.  As

shown below, these allegations are subject to summary judgment for the Board on the basis of the

undisputed facts.

A.      **The Board has a legitimate, non-discriminatory reason for promoting Jill
        Rosen rather than plaintiff to the position of Assistant Director.**

Plaintiff asserts that the Board discriminated and retaliated against him, on the basis of

sex, when it promoted Jill Rosen to Assistant Director on October 31, 2005.  Price II Compl. at

¶¶ 73-74.  Plaintiff's sole contention in support of his allegation of sex-based discrimination is

that Rosen "had less experience, inferior qualifications, and has made less significant

achievements" than plaintiff.  Id.  Even assuming, for purposes of this motion, that plaintiff can

meet his burden of establishing a prima facie case of gender-based discrimination, defendant has

provided a legitimate, nondiscriminatory reason for promoting Ms. Rosen, and plaintiff cannot

show that the proffered reason is a pretext for discrimination.

Ms. Rosen was promoted in a reorganization of the IT Division in the fall of 2005.  At that

time, IT Director Emerson became aware of the need to redesign the National Information Center

("NIC"), a centralized electronic repository that contains information about all U.S. banking organizations and their domestic and foreign affiliates as well as information on foreign banking organizations located in the U.S.  Emerson Decl., Exh. D, at ¶ 6.  As Emerson explained, "at the time, the NIC contained a significant amount of duplicative data, which made it difficult for the Federal Reserve's economists and financial analysts to obtain the accurate data needed to monitor and analyze banking organizations and the banking industry as a whole."  Id.  This massive redesign effort ultimately became known as the National Information Center Architectural Redesign Initiative ("NARI").  Id.

Emerson believed that the best approach to ensure NARI's success was to create a new branch within the IT Division known as NIC Systems that "would be staffed by division employees who are familiar with the NIC's architecture and possess the knowledge, skill and ability to design and build specialized software applications that will give users easier access to NIC data."  Emerson Decl. at ¶ 7.  In seeking Board approval for the new section and for the promotion of Ms. Rosen to head it, Emerson explained that "[t]he new officer responsibilities will be to manage the NIC Systems Branch that develops the NARI software and maintains and enhances the current NIC software, including the Central Document and Text Repository."  Exhibit F, Emerson memorandum to the Board of Governors dated October 21, 2005,  ROI 000243-000244 at 000244.

Emerson further believed that the new NIC Systems branch should be headed by an assistant director "who was also familiar with the NIC's existing architecture and possesse[d] significant experience in designing and developing software applications that could be used in the

NARI effort."  Emerson Decl., Exh. D, at ¶ 7.  In Emerson's view, "Jill Rosen (then Jill Coss) was

the best qualified person for the job."  Id.

Rosen first joined the IT Division in July 2000, when she was transferred from the Board's

Management Division.  Id. at ¶ 8.  Rosen's first assignment in the IT Division was as an

applications manager in the Statistical Services branch, where she was responsible for assisting in

the development, maintenance and testing of customized software applications that work

specifically with the NIC.        Id. at ¶ 9.  The job required Rosen to have a strong familiarity

with the NIC's architecture.  Id.

At the time Emerson made the decision to promote Rosen, she was aware that Rosen "had

at least nineteen years of experience in the IT field, at least eight of which had been devoted

exclusively to database administration in the Board's Management Division."  Id. at ¶ 10.

Emerson also knew that Rosen "had a strong understanding of the NIC's existing architecture

because she had been successfully working with it since joining the IT Division in July 2000."  Id.

In short, Emerson determined that Rosen "possessed the knowledge, skill and ability to oversee

the development and design of customized software applications that could be used in the NARI

effort."  Id.

Before making her decision to promote Rosen to assistant director, Emerson considered

all of the managers in IT, including plaintiff.  Id. at ¶ 11.  Having known plaintiff professionally

since 1982 and having supervised him since 1999, Emerson was aware that plaintiff had "spent

almost his entire career at the Board working primarily with mainframe and network services."

Id. at ¶ 3.  Emerson believed that Plaintiff's "skills primary lie in operating a mainframe and the

network infrastructure connected to it."  Id.  Even the additional responsibility that plaintiff had

more recently taken on, managing the Board's help desk, was "a function designed to assist Board employees with basic desktop computer issues," id. at ¶ 5, not one that related to software development.  Emerson thus concluded that plaintiff was less qualified than Rosen for the position of assistant director because he "lacked the necessary specialized experience in managing customized software applications development projects and did not have a comprehensive understanding of the NIC's architecture."  Id. at ¶ 11.

Plaintiff cannot meet his burden of showing that the reason provided for the promotion of Ms. Rosen, that she was the best-qualified candidate, is a pretext for discrimination.  Indeed, even if plaintiff could establish (and he cannot) that – unbeknownst to Ms. Emerson – he was more qualified for the position than Rosen, he still would be unable to show pretext, because the undisputed evidence establishes that the decision-maker honestly believed that Rosen was the most qualified.  As the D.C. Circuit has said, courts:

> may not second guess an employer's personnel decision absent demonstrably discriminatory motive.  Once the employer has articulated a non-discriminatory explanation for its action, . . . the issue is not the correctness or desirability of the reasons offered, but whether the employer honestly believes in the reasons it offers. . . . It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible.  He must show that the explanation given is a phony reason.  Evidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination; if the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so.  Short of finding that the employer's stated reason was indeed a pretext, however – and here one must beware of using 20/20 hindsight – the court must respect the employer's unfettered discretion to choose among qualified candidates.

Fischbach, 86 F.3d at 1183 (internal quotations and citations omitted); accord, George v. Leavitt, 407 F.3d at 415 (agency can prevail on summary judgment by showing "an absence of a genuine dispute in the record over whether [the decision-maker] honestly and reasonably believed in [the stated] reasons").

Nor can plaintiff prevail by claiming that the Assistant Director position was a generic one that did not call for special expertise in database management and software development, as he tried to do in the administrative process.  "Because courts are not 'super-personnel department[s] that reexamine[ ] an entity's business decision[s],' [courts must] defer to the Government's decision of what nondiscriminatory qualities it will seek in filling [a] position." Stewart v. Ashcroft, 352 F.3d 422, 429-430 (D.C. Cir. 2003) (internal quotations and citations omitted). Here, the supervisor decided that the business of the Board required promotion of an individual with database and software development knowledge, and specialized knowledge of the NIC's architecture, all of which plaintiff lacked.  Plaintiff cannot show that this decision was a pretext for discrimination or retaliation.

**B.** **The Board's has a legitimate, non-discriminatory reason for its decision not to rate Plaintiff as Extraordinary.**

Plaintiff alleges that he was discriminated and retaliated against, on the basis of age, when the Board issued him a performance rating of  "Outstanding," the second-highest rating category, rather than the highest "Extraordinary" rating, for the 2005 performance review period. Price II Compl. at ¶ 91.  Plaintiff points to the treatment of Peter Both, a younger colleague who was given a performance rating of "Extraordinary" for the same period, to support his age discrimination claim. Id. In the first place, plaintiff cannot establish a prima facie case of discrimination by comparing himself to Both, because their positions were not equivalent.  In any

- 17 -

event, defendant has provided a legitimate, nondiscriminatory reason for the performance rating, and plaintiff cannot show that the proffered reason is a pretext for discrimination.

As noted earlier, to establish a prima facie case of discrimination, a plaintiff may show that he was "similarly situated" to a person who was not a member of his protected class, who was treated better than the plaintiff in connection with an employment action. Holbrook, 196 F.3d at 261. In order to establish that the comparator individual was "similarly situated," a plaintiff must show that "all of the relevant aspects of [his] employment situation were 'nearly identical'" to those of the comparator. Id., quoting Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995). In this case, the undisputed facts establish that plaintiff's chosen comparator, Both, was a grade below plaintiff, Exhibit C, Kim Decl. at ¶ 6, a distinction that could easily result in different standards being applied to their performance evaluations. Plaintiff cannot, therefore, establish that he and Both were similarly situated as required to establish a prima facie case. See Barbour v. Browner, 181 F.3d 1342, 1345-47 (D.C. Cir. 1999 (holding that GS-12 employee was not similarly situated to a GS-13 employee who had more significant job duties); Neuren, 43 F.3d 1514 (female law firm associate not similarly situated to less senior male associate).

In any event, even if plaintiff can establish a prima facie case, the undisputed facts establish that plaintiff's manager honestly believed that his performance merited an "Outstanding" rating, while Both's merited an "Extraordinary." In the Board's performance management program, an "Outstanding" rating denotes performance that "consistently meets and often exceeds the Board's high standards of the job and the expectations of the position. This rating is reserved for a limited number of employees." Exhibit G, ROI00261-00269 at ROI00262

(Board policy on "Performance Management Program").  An "Extraordinary" rating denotes performance that "substantially and consistently exceeds" the Board's high standards and expectations, and is also "reserved for a limited number of employees."  Id.

The undisputed facts show that plaintiff's first-level supervisor, Po Kim, was solely responsible for plaintiff's performance rating in 2005.  Kim Decl., Exh. C, at ¶ 6; Emerson Decl., Exh. D, at ¶ 15.  Mr. Kim decided to give plaintiff an "Outstanding" rating rather than the higher, "Extraordinary" rating because, as he explained, the major project plaintiff had assumed during the rating period, improving the IT help desk function was "still in process."  Kim Decl. at ¶ 8.  Kim explained that, "[a]s of September 2005 [the end of the 2005 performance period],  Mr. Price had completed Level I of the project, which included an organizational restructuring of the function and was well into Level II, which involved training the help desk employees."  Id.  Although Mr. Kim was "pleased with the progress [plaintiff] had made" on the help desk project, he was "also aware that the project was still in process and that further improvements were needed in order for the help desk to reach a sustained level of performance."  Id.

Mr. Kim also explained why he had given Both an Extraordinary rating.  According to Mr. Kim, Both had begun work on the "technologically complex endeavor" of upgrading the Board's phone and voice mail systems "just twelve months earlier and had successfully moved through all five phases of the project (design, installation, testing, training and implementation) by the time of his annual performance rating."  Id. at ¶ 9.  Mr. Kim "was also highly impressed with the minimal number of complications Mr. Both encountered during the implementation phase, which [he] attribute[d] to [Both's] successful management of the project."  Id.

Plaintiff cannot meet his burden of showing that the reason provided for his 2005 PMP rating, that his performance did not rise to the level of Extraordinary, is a pretext for discrimination.  Although plaintiff may believe that his performance during that rating period merited a higher PMP rating, the perception of his supervisors is what matters.  Tolson v. James, 315 F. Supp. 2d 110, 116 (D.D.C. 2004) ("a plaintiff cannot establish pretext simply based on his own subjective assessment of [his] own performance, for plaintiff's perception of himself and of [his] work performance is not relevant.  It is the perception of the decision maker which is relevant.") (internal citations omitted).  Plaintiff's supervisor, Mr. Kim, honestly believed that quality of plaintiff's work merited a rating of Outstanding and nothing more.  There is simply no evidence which calls into dispute the genuineness of the supervisor's beliefs.

Accordingly, plaintiff cannot demonstrate that the Board's reasons rating him Outstanding during the 2005 performance period are a pretext for discrimination or retaliation or otherwise carry his burden of showing either discrimination or retaliation.

C.     **The Board has a legitimate, nondiscriminatory reason for failing to award plaintiff with its Special Achievement Award.**

Finally, plaintiff asserts that the Board discriminated and retaliated against him, on the basis of race and age, when it selected Fred Vu, a younger Asian-American colleague, to receive a Special Achievement Award in December 2005.  Price II Compl. at ¶¶ 78-79.  Plaintiff asserts that "Vu has less experience, inferior qualifications and less significant achievements" than plaintiff. Id.  Here again, however, the Board can establish a legitimate, non-discriminatory reason for its action, and plaintiff will not be able to show that the reason is a pretext for discrimination or retaliation.

The Board has specific criteria used for nominating and selecting individuals to receive the Special Achievement Award.  See Exhibit H, ROI00277-00278, "Special Achievement Awards Program."   Candidates are evaluated on one or more of the following stringent standards:

- extraordinary achievements that result in significant cost savings for the Board or the Federal Reserve Banks,

- extraordinary efforts that result in improving or increasing productivity or improving the quality of output,

- extraordinary efforts in management of programs, particularly those that enable the Board to reallocate resources to other high-priority activities,

- extraordinary personal initiative and innovation

- sustained superior performance.

Id. at ROI 00277.  Nominations may be made by division directors, and award recipients are selected by a committee of senior Board staff.  Id.

This system was followed in connection with the 2005 nomination and selection of Fred Vu to receive the Special Achievement Award.  As Director of the IT Division, Marianne Emerson solicited nominees from the assistant directors in her Division at a weekly staff meeting, and then "turned the floor over for discussion."   Emerson Decl., Exh. D, at ¶ 12.  Ms. Emerson did not propose any names for consideration because, in her view, "the assistant directors are in a better position to judge whether an employee has met the criteria set by the Board."  Id.  Neither Mr. Kim, plaintiff's first-line supervisor, nor any other assistant director in IT suggested nominating plaintiff for the award.  Id.; Kim Decl., Exh. C, at ¶¶ 4-5.[5]  Kim explained he "knew

---

[5]  Accordingly, the undisputed evidence refutes plaintiff's allegation that both he and Vu were nominated for the award.  See Price II Compl. ¶ 78.

that [plaintiff] had started a project to improve the Board's help desk.  This function helps IT employees and employees in several other divisions at the Board with desktop problems. Nevertheless, [Mr. Kim] felt that [plaintiff] had not achieved the level of performance required to be nominated for the Board's Special Achievement Award."  Id. at ¶ 5.  Indeed, Mr. Kim did not nominate any of his subordinates for the award.  Id. at ¶ 4.

Moreover, Fred Vu, the IT employee who was nominated and selected for the award certainly met the criteria for it.  According to Marianne Emerson, Mr. Vu "had played a key role in establishing disaster-recovery systems for the Board.  Fred demonstrated extraordinary personal initiative, creativity and innovation in strengthening the Board's telecommunications infrastructure.  He completed an extraordinary project in an extraordinary manner."  Emerson Decl., Exh. D, at ¶ 13.

Here again, plaintiff cannot meet his burden of showing that the reason provided for the decision not to nominate him for the Board's Special Achievement Award, that he failed to achieve the extraordinary level of performance required to be nominated, is a pretext for discrimination.  Although plaintiff may believe that his efforts in the help desk project qualified him for the award, the perception of his supervisors is what matters.  Tolson, 315 F. Supp. 2d at 116.  And while plaintiff's supervisor, Mr. Kim, was complimentary regarding plaintiff's work on the help desk project, he did not believe that it rose to the level of extraordinary effort required for the Special Achievement Award.  Kim Decl., Exh. C, at ¶ 5.  There is simply no evidence that would call into dispute the genuineness of Kim's beliefs.

Accordingly, plaintiff cannot demonstrate that the Board's reasons for not selecting him for the 2005 Special Achievement Award are a pretext for discrimination or retaliation or otherwise carry his burden of showing either discrimination or retaliation.

## CONCLUSION

Summary judgment should be granted on all counts because plaintiff's claims are either barred by res judicata, fail to establish a required element of Plaintiff's claim, or are without merit based on the undisputed facts.

Respectfully submitted,

January 22, 2007          s/ Katherine H. Wheatley
                          Katherine H. Wheatley (Bar No. 359037)
                          Associate General Counsel

                          John L. Kuray
                          Senior Counsel

                          Jason A. Gonzalez
                          Senior Attorney

                          Board of Governors of the
                          Federal Reserve System
                          20th & C Streets, N.W.
                          Washington, D.C. 20551
                          202-452-3779

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
JOHN A. PRICE,                          )
            Plaintiff,                  )          Civil Action No. 06-1569 (RCL)
                                        )
v.                                      )
                                        )
BEN S. BERNANKE,                        )
CHAIRMAN OF THE BOARD                   )
OF GOVERNORS OF THE                     )
FEDERAL RESERVE SYSTEM,                 )
            Defendant.                  )
_____)

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7(h) of the Rules of this Court, defendant submits the following as his statement of material facts as to which there is no genuine dispute, in support of his motion for summary judgment.

1.      Plaintiff, John Price, is a 54 year old Caucasian male (born April 24, 1952) who is currently employed as a Grade 29 Manager in the Division of Information Technology ("IT") of the Board of Governors for the Federal Reserve System ("Board"). Complaint at ¶¶ 1-2 and 7.

2.      Marianne Emerson is the Director of the IT Division and has been Price's third-level supervisor since July 2002. Exh. D, Emerson Decl., at ¶ 1-2.

3.      Po Kim is the Assistant Director of the General Systems Support Branch in the IT Division and has been Price's first-level supervisor since September 2004. Exh. C, Kim Decl., at ¶ 1-3.

4.      Beginning in early 2001, Price filed the first of what are now four administrative complaints of discrimination with the Board. Complaint at ¶¶ 34, 46 and 55. On

June 14, 2004, Price filed <u>Price v. Greenspan</u>, No. 04-0973 (RCL) ("<u>Price I</u>") in this Court, claiming sex, age, and race discrimination and retaliation in connection with a number of workplace issues, including those identified in his first, second and third administrative complaints. Exh. B, <u>Price I</u> Complaint.

5.  On June 22, 2004, the District Court granted the defendant's motion for summary judgment as to the discrimination counts and dismissed the retaliation counts as untimely filed, 374 F. Supp. 2d 144 (D.D.C. 2005).  Both of these rulings were upheld on appeal. <u>Price v. Bernanke</u>, 2006 U.S. App. LEXIS 6166 (D.C. Cir. 2006); <u>Price v. Bernanke</u>, 470 F.3d 384 (D.C. Cir. 2006).

6.  The Complaint filed in this case largely duplicates that filed in <u>Price I</u>, except that it adds three new allegations.  <u>Compare</u> <u>Price I</u> Complaint, Exh. B, ¶¶ 1-7, 9-67 with <u>Price II</u> Complaint ¶¶ 1-6, 8-68, 70.  The new claims are: (1) that on October 31, 2005, a woman, Jill Rosen, was promoted to the position of Assistant Director of the IT Division, a position plaintiff felt should have gone to him; (2) that plaintiff's 2005 performance evaluation ("PMP") was unfairly low, particularly compared to a higher evaluation rating given to a younger colleague; and (3) that a younger Asian colleague had received the Board's 2005 Special Achievement Award, an award plaintiff felt should have gone to him.  <u>Price II</u> Complaint at ¶¶ 76, 83 and 87.

7.  In or around October 2005 the IT Division was reorganized and a new branch called NIC Systems was formed. Exh. D, Emerson Decl., at ¶ 6-7.  As part of the reorganization, Emerson selected Jill Rosen (formerly Jill Coss), a female, to be the assistant director of the newly created branch.  <u>Id</u>.

2

8.    The NIC Systems branch is responsible for administering the National Information

Center ("NIC") and the National Information Center Redesign Initiative ("NARI").  Exh.

F, ROI 000243 at 000244 (Emerson memorandum to the Board of Governors dated

October 21, 2005).  The NIC is a large data repository that contains information

regarding all U.S. banking organizations and their domestic and foreign affiliates.

Emerson Decl., Exh. D, at ¶ 6.  Emerson believed that the new branch should be "staffed

by division employees who are familiar with the NIC's architecture and possess the

knowledge, skill and ability to design and build specialized software applications that

will give users easier access to NIC data."  Id. at ¶ 7.

9.    Marianne Emerson is solely responsible for the decision to promote Rosen, and not to

promote plaintiff, to the position of Assistant Director, NIC Systems Branch.  Emerson

Decl. at ¶¶ 6-11.  Having known plaintiff professionally since 1982 and having

supervised him since 1999, Ms. Emerson was aware that plaintiff had "spent almost his

entire career at the Board working primarily with mainframe and network services." Id.

at ¶ 3.  Ms. Emerson was also aware that, in January 2004, plaintiff had been given the

additional responsibility of renovating the Board's help desk, a function designed to

assist Board employees with basic desktop computer issues.  Id. at ¶ 5.  Emerson

concluded that plaintiff was less qualified than Rosen for the position of assistant director

because he "lacked the necessary specialized experience in managing customized

software applications development projects and did not have a comprehensive

understanding of the NIC's architecture."  Id. at ¶ 11.

10.    At the time of her decision not to select plaintiff for the assistant director position,

Ms. Emerson was aware generally of the existence of plaintiff's action in <u>Price I</u> starting

in July 2004.        <u>Id</u>. at ¶ 16.  However, Ms. Emerson was "not aware of any specific

actions taken by [plaintiff] regarding [<u>Price I</u>] during the time period between August and

December 2005."  <u>Id</u>.

11.    At the time of her decision to promote Ms. Rosen, Ms. Emerson was aware that

Ms. Rosen had at least nineteen years of experience in the IT field, at least eight of which

had been spent as a database administrator in the Board's Management Division.  <u>Id</u>. at

¶ 10.  Ms. Emerson further knew that Rosen's first assignment in the IT Division was as

an applications manager in the Statistical Services branch, where she was responsible for

assisting in the development, maintenance and testing of customized software

applications that work specifically with the NIC.  <u>Id</u>.  The job required Rosen to have a

strong familiarity with the NIC's architecture.  <u>Id</u>. at ¶ 9.  Thus, Emerson knew that Rosen

"had a strong understanding of the NIC's existing architecture because she had been

successfully working with it since joining the IT Division in July 2000."  <u>Id</u>. at ¶ 10.

Emerson determined that Rosen "possessed the knowledge, skill and ability to oversee

the development and design of customized software applications that could be used in the

NARI effort."  <u>Id</u>.

12.    The Board's performance management program requires that employees be given an

annual performance evaluation and rating (referred to as a "PMP").  Exhibit G,

"Performance Manage Program" policy, ROI00261-00269.  A rating of  "Outstanding"

denotes a performance that "consistently meets and often exceeds the Board's high

4

standards of the job and the expectations of the position.  Id. at ROI000262.  This rating

is "reserved for a limited number of employees."  Id.  An "Extraordinary" rating denotes

performance that "substantially and consistently exceeds" the Board's high standards and

expectations, and is also "reserved for a limited number of employees."  Id.

13.    On or about October 24, 2005, Po Kim issued Peter Both, a male, age 34, a PMP rating of

"Extraordinary" for the performance period extending from October 2004 to September

2005.  Exh. C, Kim Decl. at ¶ 9.  Mr. Kim is solely responsible for the decision to rate

Mr. Both as "Extraordinary."  Id.  Mr. Kim's decision was based on Mr. Both's "overall

performance, which includes the work he had done with the Board-wide phone and voice

mail project."  Id.  Mr. Kim observed that "Mr. Both [had] started this technologically

complex endeavor just twelve months earlier and had successfully moved through all five

phases of the project (design, installation, testing, training and implementation) by the

time of his annual performance rating."  Id.  Mr. Kim was "also highly impressed with

the minimal number of complications Mr. Both encountered during the implementation

phase, which [Kim] attribute[s] to his successful management of the project."  Id.

14.    On **or about October 25, 2005**, Po Kim issued plaintiff a PMP rating of "Outstanding" for

the performance period extending from October 2004 to September 2005.  Kim Decl. at

¶¶ 6-8.  Mr. Kim is solely responsible for the decision to rate plaintiff as "Outstanding"

rather than "Extraordinary."  Id. at ¶ 6; Emerson Decl. at ¶ 15.  Mr. Kim's decision was

based on Price's "overall performance, which includes the work he had done to improve

the IT Help Desk function."  Kim Decl. at ¶ 8.  Mr. Kim decided to give plaintiff an

"Outstanding" rating rather than the higher, "Extraordinary" rating because, as he

explained, the major project plaintiff had assumed during the rating period, improving the IT help desk function, "was still in process . . . ." Id.  Kim understood that, "[a]s of September 2005, Mr. Price had completed Level I of the project, which included an organizational restructuring of the function and was well into Level II, which involved training the help desk employees." Id.  Although Mr. Kim was "pleased with the progress [plaintiff had] made" on the help desk project, he was "also aware that the project was still in process and that further improvements were needed in order for the help desk to reach a sustained level of performance." Id.

15.    At the time Mr. Kim issued these evaluations, Mr. Both was at the Grade 27 level and plaintiff was at the Grade 28 level in the Board's employment system. Id. at ¶ 6.

16.    At the time Mr. Kim made the decision to rate plaintiff's performance "Outstanding," he was "unaware of any activity on the part of [plaintiff] relating to EEO rights and was unaware [plaintiff] had filed a civil complaint in District Court alleging discrimination." Id. at ¶ 10.

17.    Each year, the Board recognizes and rewards employees who have made extraordinary accomplishments related to the mission and objectives of the Board. Exh. H, Special Achievement Awards Program, at ROI00277-00278.  Candidates are evaluated on one or more of the following stringent standards:

- extraordinary achievements that result in significant cost savings for the Board or the Federal Reserve Banks,

- extraordinary efforts that result in improving or increasing productivity or improving the quality of output,

- extraordinary efforts in management of programs, particularly those that enable the Board to reallocate resources to other high-priority activities,

- extraordinary personal initiative and innovation

- sustained superior performance.

Id. at ROI 00277.  Nominations may be made by division directors, and award recipients are selected by a committee of senior Board staff.  Id.

17.   Po Kim is the person primarily responsible for nominating employees within the General Systems support branch of the IT Division, where plaintiff  is employed.  Kim Decl., Exh. C, at ¶ 4.  In 2005, Kim did not nominate anyone from his branch for the Board's Special Achievement Award.  Id. at ¶ 5.  At the time, Mr. Kim not believe that plaintiff's effort in the help desk renovation project rose to the level of extraordinary effort required for the Special Achievement Award.  Exh. C, Kim Decl. ¶ 5.  At the time he made the decision not to nominate plaintiff, Mr. Kim was "unaware of any activity on the part of [plaintiff] relating to EEO rights and was unaware [plaintiff] had filed a civil complaint in District Court alleging discrimination."  Id. at ¶ 10.

18.   In or around August 2005, Fred Vu, an Asian male, age 38, was nominated by the IT Division for the Board's Special Achievement Award.  Emerson Decl. at ¶ 13.  Marianne Emerson believed that Mr. Vu "had played a key role in establishing disaster-recovery systems for the Board."  Id.  Emerson further believed that Vu "demonstrated extraordinary personal initiative, creativity and innovation in strengthening the Board's telecommunications infrastructure."  Id.  In Emerson's view, "[h]e completed an extraordinary project in an extraordinary manner."  Id.

7

Respectfully submitted,

January 22, 2007                s/ Katherine H. Wheatley
                               Katherine H. Wheatley (Bar No. 359037)
                               Assistant General Counsel

                               John L. Kuray
                               Senior Counsel

                               Jason A. Gonzalez
                               Senior Attorney

                               Board of Governors of the
                               Federal Reserve System
                               20th & C Streets, N.W.
                               Washington, D.C. 20551
                               202-452-3779